**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JEFFERY LAMONTE HARGRO**                                    **PLAINTIFF**

**VERSUS**                        **CIVIL ACTION NO. 1:08cv180-HSO-JMR**

**MIKE BYRD, SHERIFF OF JACKSON
COUNTY, *et al.***                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court pursuant to Defendants' Motion [36-1] for

Partial Summary Judgment filed on February 11, 2009, which is accompanied by a

Memorandum [37-1] in Support.  Plaintiff filed a Response [39-1] in Opposition on

July 20, 2009, which was actually a request for additional time to respond, to which

Defendants submitted a Rebuttal [40-1].  Plaintiff then submitted a true Response

[41-1] in Opposition on July 27, 2009.  Three days later, Plaintiff requested an

opportunity to amend his Response to the Motion.  *See* Pl.'s Mot. [43-1].  The Court

granted Plaintiff's request, and on August 21, 2009, Plaintiff filed a Supplemental

Response [46-1] in Opposition to Defendants' Motion for Partial Summary

Judgment.  The Court, being fully advised in the premises, and after carefully

considering the pleadings filed as a matter of record, along with the applicable law,

finds that Defendants' Motion [36-1] for Partial Summary Judgment is well taken

and should be granted.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Jeffery Lamonte Hargro filed this *pro se* Complaint on May 5, 2008,

alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while he was

lawfully incarcerated in the Jackson County Adult Detention Center ("JCADC") during June and July 2007, and while later being held as a pretrial detainee at the JCADC from March 2008 to July 2009. Plaintiff filed attachments to his Complaint on May 12, 2008, June 2, 2008, and June 4, 2008. *See* Attach. [5-1, 7-1, 8-1] to Pl.'s Compl. Plaintiff alleges that he was subjected to excessive force in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishment Clause, and that Defendants Mike Byrd and Ken Broadus are liable for failing to properly train the subordinate officer who assaulted Plaintiff. The Court emphasizes that only Plaintiff's individual capacity and official capacity claims against Defendants Broadus, Byrd, Rader, and Stewart, and his official capacity claims against Defendant Albin are addressed by Defendants' present Motion [36-1] for Partial Summary Judgment. Plaintiff's individual capacity claim of excessive force against Defendant James Albin is not presently before the Court.

On or about May 22, 2007, Plaintiff's probation sentence for the offense of False Personation was revoked by the Jackson County Circuit Court, and he was incarcerated at the JCADC. *See* Ex. "11" Attach. To Defs.' Mot. [36-2] for Partial Summ. J. On June 24, 2007, Defendant Albin and Deputy Curtis Watts entered the I-E dayroom in response to a noise that sounded like a fight. *See* Defs.' Answer at p. 2; *see also* Attach. [8-1] to Pl.'s Compl. at p. 3. While entering the dayroom, Defendant Albin accidentally stepped on Plaintiff's foot; Plaintiff was standing in the doorway of I-E cellblock. *See id*. After the deputies learned the noise was not a fight, Plaintiff and Defendant Albin exchanged words and both were involved in an

altercation.

Plaintiff claims that he "verbally denounced" Defendant Albin "for purposely stepping" on his foot and not excusing himself. *See* Pl.'s Compl. Plaintiff alleges Defendant Albin then grabbed him by the collar, head-butted him, and pulled him into the hallway. *See id.* Plaintiff asserts the head-butt broke his nose. *See id.* Once in the hallway, Plaintiff was instructed to lay down on the floor. He claims that he complied. Plaintiff alleges that Defendant Albin struck him in the back of the head while he was on the floor, requiring medical treatment. *See id.*

Plaintiff was transported to the Singing River Hospital Emergency Room to receive medical attention for a laceration on the back of his head. Staples were used to close a laceration on Plaintiff's scalp. *See* Ex. "6-B" Attach. to Pl.'s Resp. The medical report, which contains Plaintiff's diagnosis for June 24, 2007, makes no mention of a broken nose. *See id.* Plaintiff was treated only for a scalp laceration. *See id.*

Defendant Ricky Rader, an investigator with the JCADC, investigated the incident. *See* Ex. "8-B" Attach. to Pl.'s Resp. Deputy Watts, the only other officer present during the altercation, gave a report relating that as Defendant Albin was leaving the dayroom, Plaintiff stated "if you step on my foot again I will kick your f*** ass you can't disrespect me like that." *See* Ex. "5-A" Attach. to Pl.'s Resp. According to Deputy Watts, Defendant Albin then asked Plaintiff to step into the hallway, and Plaintiff refused, stating "I am man you can't make me step out there." *Id.* Deputy Watts claims that Plaintiff then grabbed Defendant Albin, at which

point Defendant Albin pulled Plaintiff into the hallway. *See id.* Deputy Watts states that Plaintiff then became aggressive and Defendant Albin tried to restrain him. *See id.* Deputy Watts claims he heard Defendant Albin state "you hit me" and then witnessed Defendant Albin deliver a knee strike, causing Plaintiff to fall to the ground; as Defendant Albin was about to throw another knee strike, Deputy Watts intervened, and then escorted Defendant Albin to the control room. *See id.*

Defendant Albin completed a report on the incident. He acknowledges that he stepped on Plaintiff's foot. He claims that Plaintiff became very upset and aggressive. *See* Ex. "4-A" Attach. to Pl.'s Resp. Defendant Albin asserts that, as he was leaving, Plaintiff shouted obscenities at him and grabbed his shirt. *See id.* Defendant Albin instructed Plaintiff to release his shirt, but Plaintiff would not do so. *See id.* At this point, Defendant Albin claims that he asked Plaintiff to step into the hallway and to "calm down," and that he attempted to escort Plaintiff into the hallway by "lightly tugg[ing]" on Plaintiff's uniform. *See* Ex. "4-B" Attach. to Pl.'s Resp. Plaintiff refused and began punching Defendant Albin in the chest and stomach. Defendant Albin says that he had to head-butt Plaintiff in order to get him to stop punching. *See id.* Once Plaintiff was on the ground, Defendant Albin maintains that Plaintiff continued to resist, and attempted to get up and "continue swinging" at him. *See* Ex. "4-C" Attach. Pl.'s Resp. At this point, Defendant Albin struck Plaintiff with a "knee strike and an elbow." *Id.* Deputy Watts intervened, and Plaintiff was taken to the hospital. *See id.*

On June 25, 2007, Defendant Rader completed an affidavit charging Plaintiff

with assault on an officer. *See* Ex. "8-B" Attach. Pl.'s Resp. On July 19, 2007, a Justice Court Judge bound the assault charge over to the next grand jury. *See id.* Plaintiff claims the grand jury did not find sufficient evidence to indict him for the charge of assault on an officer. *See* Pl.'s Resp.

Plaintiff was given notification on June 25, 2007, that a rules violation hearing would be held. On June 29, 2007, a hearing was held at the JCADC concerning the altercation between Hargro and Albin. *See* Ex. "9" Attach. to Defs.' Mot. for Partial Summ. J. Plaintiff was found guilty of assaulting Defendant Albin and was assigned to BE lockdown as punishment. *See id.*

Plaintiff's Complaint alleges that Defendant Albin used excessive force during the altercation. Plaintiff contends that Defendants did not properly train Defendant Albin, and that JCADC employees have been violating the civil rights of inmates for years. *See* Pl.'s Compl. Plaintiff further challenges the conditions of his confinement while incarcerated in the JCADC. Specifically, he complains that he was held in lockdown for a period and, being thus segregated from other inmates, his mat was taken away, such that he had to sleep on a steel bunk. He also asserts that he was given bag lunches while in lockdown. *See* Attach. [5-1] to Pl.'s Compl., at p. 2. Plaintiff next alleges that he was defamed by certain of Defendants in a Mississippi Press article, which he claims was published on June 26, 2007, and that he was wrongly issued a Rules Violation Report ("RVR") at the JCADC. Finally, Plaintiff asserts that he has been denied writing materials and that his legal mail has been tampered with.

In their Motion for Partial Summary Judgment, Defendants assert that Plaintiff's claims against all the named Defendants officially are claims against Jackson County, Mississippi, and that all of his official and individual capacity claims against Defendants Ken Broadus, Mike Byrd, Ricky Rader, and Cindy Stewart, as well as those against James Albin, in his official capacity, fail. Defendants submit that they are entitled to partial summary judgment and dismissal of all claims, with the lone exception of the individual capacity claim against Defendant Albin for excessive force.

## II. <u>DISCUSSION</u>

A.    <u>Standard of Review</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987).  "The requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (emphasis in original).  In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary

judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *See White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights; section 1983 was intended to protect rights protected by federal law. *See Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

1. <u>Official Capacity Claims and Municipal Liability</u>

Defendants contend that Plaintiff's official capacity claims against them are, in reality, claims against the Jackson County Adult Detention Center. Since the JCADC is a local governmental entity, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding section 1983 municipal liability.

Municipal liability under section 1983 requires proof of three elements: (1) the existence of a policymaker; (2) the existence of an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *see also Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on the basis of *respondeat superior*, because the text of section 1983 will not bear such a reading. *See Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of

an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695.

Therefore, municipalities may not be held liable for acts of lower level employees, only for constitutional violations committed pursuant to an official policy or custom. *See Piotrowski*, 237 F.3d at 578.

Not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *See id.* at 580; *see also Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264.

The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *See Snyder*

*v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *see also Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted"); *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999).

2.  Individual Capacity Claims and Qualified Immunity

To the extent Plaintiff's Complaint asserts claims against Defendants in their individual capacities, as law enforcement officials they are entitled to assert qualified immunity from liability. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). In evaluating a claim of qualified immunity, the determination must first be made as to whether a plaintiff has alleged a violation of a clearly established constitutional right. *See Siegert v. Gilly*, 500 U.S. 226, 231 (1991). Even if the conduct violates a constitutional right, qualified immunity applies if the conduct was objectively reasonable. *See Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). The objective reasonableness analysis focuses on whether a reasonable person would have believed his conduct was constitutional in light of the information available to him and the clearly established law. *See Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, even officials who reasonably but mistakenly violate the Constitution are entitled to immunity. *See id.*

B.  Analysis

1.  Excessive Force and Inadequate Training Claims

a.  Official Capacity Claims and Municipal Liability

Plaintiff's Complaint asserts that Defendants Mike Byrd, Sheriff of Jackson County, Ken Broadus, Director of JCADC, and James Albin are liable by and

through their employment with the Jackson County Adult Detention Center.

Plaintiff's official capacity claims against these Defendants are, in reality, against

the offices which each occupied at the time of the alleged incidents and, ultimately,

Jackson County. To the extent Plaintiff brings this action against these Defendants

in their official capacities, he must establish a constitutional violation, and in

addition must satisfy the requirements necessary to impose municipal liability.

"Supervisory officers cannot be held liable under Section 1983 for the actions

of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County

Sheriff Dept.*, 480 F.3d 358, 367 (5th Cir. 2007) (*quoting Thibodeaux v. Arceneaux*,

768 F.2d 737, 739 (5th Cir. 1985)). A municipality's failure to properly train or

supervise its employees can be a policy or custom giving rise to section 1983 liability.

*See City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Plaintiff must prove

that: (1) the training procedures of the municipality's policymaker were inadequate;

(2) the municipality's policymaker was deliberately indifferent in adopting the

training policy; and (3) the inadequate training policy directly caused the

constitutional deprivation. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir. 1996).

Finally, "[t]he description of a policy or custom and its relationship to the underlying

constitutional violation . . . cannot be conclusory; it must contain specific facts."

*Spiller v. City of Tex. City, Police Dept.*, 103 F.3d 162, 167 (5th Cir. 1997).

Assuming that Plaintiff has properly alleged a violation of his constitutional

rights, that fact alone will not permit recovery in an official capacity claim

predicated on inadequate training or supervision. Plaintiff must further prove that

the constitutional violation occurred because Defendants failed to train or supervise their employees, and that the inadequate training was the result of an official custom or policy of the JCADC. Plaintiff has not specifically alleged that there existed a custom of JCADC employees abusing inmates, or that there was a policy to inadequately train employees. Plaintiff implies there is a policy of abusing inmates by alleging inhumane treatment and civil rights violations of inmates by JCADC employees has occurred for years. *See* Pl.'s Attach. [8-1] to Compl., at p. 7. In support, Plaintiff submits evidence of an alleged incident between him and Defendant Albin that occurred in November 2008, after the altercation alleged in the present complaint. *See* Exs. "12-A," "12-B," "13-A," 13-B," "13-C," "13-D" Attach. to Pl.'s Resp. On November 18, 2008, Plaintiff claims that Defendant Albin pulled a knife out and held it to his crotch. *See* Ex."12-A" Attach. to Pl.'s Resp. After interviewing witnesses and reviewing video tapes, Defendant Broadus found there was no knife and that this accusation was without merit. *See* Ex. "12-B" Attach. to Pl.'s Resp. Plaintiff also submits evidence of Defendant Albin head-butting another JCADC inmate on September 1, 2008, *see* Exs. "14-A," "14-B," Attach. to Pl.'s Resp., and a complaint from an inmate from March 26, 2007, that Defendant Albin punched and choked him, *see* Ex. "15-A" Attach. to Pl.'s Resp.

Defendants maintain that Defendant Albin was sufficiently trained, such that there was no deliberate indifference by Jackson County to the rights of persons with whom he would come into contact. Defendants submit evidence that Defendant Albin is a certified correctional officer who completed a course of instruction from the

Peace Officers Standards and Training Commission in the State of Alabama. *See* Ex. "1" Attach. to Defs.' Mot. for Partial Summ. J. This training apparently consisted of a twelve week correctional academy which included numerous hours of instruction concerning proper use of force in a correctional setting and the appropriate use of force in general. *See* Ex. "7" Attach. to Defs.' Mot. for Partial Summ. J. Defendant Albin received further training from the Jackson County Sheriff's Department in the use of OC Spray, surviving edged weapons, proper taser use, and less than lethal specialty impact force. *See* Exs. "2," "3," "4," "5" Attach. to Defs.' Mot. for Partial Summ. J. Defendants claim that Defendant Albin was properly trained to work in a correctional facility, and therefore there was no deliberate indifference on Jackson County's part. The Court notes that, in Plaintiff's Response to Defendants' Motion for Partial Summary Judgment, he appears to concede that Defendant Albin was properly trained, but argues that "[Defendant Albin] did not use the training ... [or] follow the guidelines, policies and procedures of the Jackson County Sheriff's Department." Pl.'s Resp., at p. 1.

Ordinarily, to impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). In particular, there must be specific allegations as to how a particular training program is defective. *See id*. While Plaintiff contends that he suffered abuse at the hands of a JCADC deputy, he makes no specific allegations as to how JCADC's training and supervision program was inadequate or defective.

Nor does Plaintiff present any evidence to contradict Defendants' assertions that the training and supervision of JCADC was adequate. Instead, Plaintiff submits grievance and incident forms pertaining to three different incidents involving Defendant Albin, two of which occurred after Plaintiff filed his Complaint in this case. The only evidence Plaintiff submits that inmates were being abused prior to June 24, 2007, is an inmate complaint from Issac Nathan, which alleges Defendant Albin punched and choked him on March 24, 2007. *See* Ex. "15-A" Attach. to Pl.'s Resp. An investigation was conducted concerning this claim, and it was determined to be unfounded. *See* Ex. "15-B" Attach. to Pl.'s Resp. The Court is not persuaded that the foregoing is sufficient to support a claim of inadequate training or supervision.

The Court finds that Plaintiff's assertions are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Based on the evidence of record, the Court finds that Plaintiff cannot withstand summary judgment on the issue of whether there existed an official policy or custom of inadequately training or supervising the employees of the JCADC.

Assuming, *arguendo*, that Plaintiff could  prove the existence of an official policy that resulted in inadequate training or supervision, the Court finds that Defendants would still be entitled to summary judgment because he cannot prove that Defendants' failure to adequately train or supervise amounted to deliberate indifference. "Deliberate indifference . . . [requires] proof that a municipal actor

-14-

disregarded a known or obvious consequence of his action." *Estate of Davis ex rel McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). To establish deliberate indifference, a plaintiff must prove that a defendant acted with more than negligence or even gross negligence. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff must ordinarily demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (*quoting Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).

Plaintiff's proffered evidence is legally insufficient to establish that Defendants were aware that the training and supervision of the JCADC employees was inadequate and likely to result in constitutional violations. Plaintiff has offered no evidence of civil rights violations that occurred prior to June 24, 2007. The Court finds that, absent some evidence of a pattern of prior violations, Plaintiff has failed to adequately prove that Defendants were aware that he faced a substantial risk of harm.

Plaintiff's allegation that the JCADC conducted an improper investigation is legally insufficient to constitute deliberate indifference. Although Plaintiff argues that a private investigator was not hired, the record indicates that Defendants conducted a thorough investigation into the altercation. The mere fact that Plaintiff was not pleased with the outcome is not sufficient evidence of deliberate indifference. At best, Plaintiff's assertions amount to an isolated incident of negligent conduct, which, by itself, will not support the official capacity claims

against Defendants.

Based on the foregoing analysis, Plaintiff fails to establish that a policy or custom on the part of the JCADC was the moving force behind any alleged constitutional violation. Furthermore, Plaintiff's allegations do not indicate that he faced a substantial risk of serious harm to which Defendants responded with deliberate indifference.

b.    <u>Individual Capacity Claims and Qualified Immunity</u>

Plaintiff alleges that Defendants Byrd and Broadus failed to provide reasonable training and supervision to the subordinate employees of the JCADC, and, as a result, inmate abuse was commonplace. However, Plaintiff presents no evidence in support of this allegation. Plaintiff has failed to create a genuine issue as to whether Defendant Byrd or Broadus acted unreasonably. To impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. In particular, there must be specific allegations as to how a particular training program is defective. *See id.* Plaintiff does not set forth specific allegations as to how Defendants Byrd or Broadus were unreasonable in their training and supervision methods. In fact, Plaintiff's only specific allegation in this regard is that Defendant Albin had a "lack of training." Defendants have rebutted this contention by providing certifications indicating that Defendant Albin was properly trained to be a corrections officer. *See* Exs. "1," "2," "3," "4," "5," "7" Attach. to Defs.' Mot. for Partial Summ. J. Plaintiff has neither disputed these certifications nor indicated

how they are defective or inadequate.

The Court finds that Plaintiff has failed to establish any unreasonable conduct on behalf of Defendants Broadus or Byrd. They are entitled to qualified immunity as to Plaintiff's individual capacity claims of inadequate training or supervision.

2.     Conditions of Confinement

As stated earlier, an essential element of any official or individual capacity claim is a violation of a clearly established constitutional right. As discussed below, none of Plaintiff's conditions of confinement claims rise to the level of a constitutional violation. His Eighth and Fourteenth Amendment claims against Defendants Byrd and Broadus, both in their official and individual capacities, must be dismissed.

a.     Incarceration as a Convicted Prisoner

As to Plaintiff's claim that he was subjected to unreasonably dangerous prison conditions in violation of the Eighth Amendment prohibition against cruel and unusual punishment, "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (*quoting Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). The Eighth Amendment imposes duties on prison officials, and requires that they provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. *See Farmer*, 511 U.S.

at 832.  Prison officials must also "take reasonable measures to guarantee the safety of the inmates." *Id.* (*quoting Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).  "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling*, 509 U.S. at 33.

A prison condition constitutes an Eighth Amendment violation only when two requirements are met.  First, there is an objective requirement that the alleged condition be so serious as to deprive the prisoner of the "minimal civilized measure of life's necessities," such as some basic need.  *See Farmer*, 511 U.S. at 834 (*quoting Rhodes,* 452 U.S. at 347).  Second, the prison official must have been deliberately indifferent to the inmate's health or safety.  *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (footnote omitted).  The United States Supreme Court defined the deliberate indifference standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

Accordingly, a prison official's failure to eliminate a substantial risk of harm which he *should have* perceived, but in fact *did not*, cannot support liability under the Eighth Amendment.  *See id*. at 838.

Plaintiff complains that he was segregated from other inmates following the

altercation with Defendant Albin, that his mat was taken from him thus forcing him to sleep on a steel bunk, and that he was given bag lunches while in lockdown. *See* Compl.; *see also* Attach. [5-1] to Compl. Plaintiff claims this amounted to cruel and unusual punishment in violation of his Eighth Amendment rights. Defendants respond that Plaintiff was placed in lockdown from June 24, 2007, until July 11, 2007, following the altercation with Defendant Albin. They further note that Plaintiff was found guilty of a rules violation stemming from the altercation, and lockdown was his punishment. *See* Ex. "9" Attach. to Defs.' Mot. for Partial Summ. J. Defendants acknowledge that Plaintiff's mat was taken away during the day while he was in lockdown, but assert that it was returned at night. *See* Ex. "10" Attach. to Defs.' Mot. for Partial Summ. J. According to Defendants, inmates were destroying the mats and clogging the drains with them during the day, so JCADC took them away and returned them at night when inmates were more likely to use them for sleeping. *See id.* Plaintiff's contention that he was served bag lunches while he was in lockdown fails to state a constitutional claim. Plaintiff has offered no evidence or even alleged that the food at the JCADC was served in this manner as a form of punishment, or that it was not nutritionally sound or sufficient. Defendants submit evidence that Plaintiff was served three meals a day while he was in lockdown, that the meals were prepared by Aramark Correctional Services, LLC, and that they were proper meals. *See id.*

Plaintiff's claim that he was denied writing materials while in lockdown is by itself insufficient to state a constitutional claim. The Court will treat this issue as a

denial of access to courts claim. Prisoners have a constitutional right to meaningful access to the courts. *See McDonald v. Stewart*, 132 F.3d 225, 230 (5th Cir. 1998). In order for the Plaintiff to succeed on such a claim, he must show actual injury, which includes evidence proving that the denial of writing materials or legal resources hindered his efforts to pursue a non-frivolous case. *See id.* at 230-31. Plaintiff has presented no evidence that the denial of writing materials prejudiced or harmed his pursuit of this or any legal matter. This issue does not rise to an actionable claim.

Plaintiff fails to establish that his conditions of confinement at the JCADC violated his constitutional rights under the Eighth Amendment. He presents insufficient evidence that Defendants denied him a basic need or were deliberately indifferent to the existence of a substantial risk of harm. Plaintiff's Eighth Amendment claims are legally insufficient to establish liability against Defendants, and must be dismissed.

b.     Incarceration as a Pretrial Detainee

Plaintiff was also held as a pretrial detainee from March 14, 2008, to July 14, 2009, and he has alleged some conditions of confinement that violated his constitutional rights during this period. Specifically, he complains that he was unreasonably placed in lockdown, and that his incoming mail was tampered with.

As a pretrial detainee, Plaintiff's constitutional rights flowed from the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due

process right not to be punished for that crime. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has distinguished between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees, as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or an "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir. 1996). "Punishment"

---

[1] The following were deemed to be conditions of confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir. 1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir. 1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir. 1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir. 1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C. Cir. 1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir. 1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir. 1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir. 1981) (overcrowding).

may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless." *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *See id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir. 1996).

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement as a pretrial detainee within the JCADC, and that Defendants Byrd and Broadus are officially liable because they failed to remedy the situation. Plaintiff's allegations are that he was unreasonably placed in lockdown and that his legal correspondence was tampered with. However, Plaintiff submits no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any perceived constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the official capacity claims against Defendants Byrd and Broadus. Defendants Byrd and Broadus are entitled to summary judgment on Plaintiff's official capacity claims as they relate to conditions at the JCADC.

To the extent Plaintiff's Complaint seeks to impose liability against Defendants Byrd and Broadus in their individual capacities for the allegedly

unconstitutional conditions at the JCADC, they may assert qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). The determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *See Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish section 1983 liability against Defendants Byrd and Broadus, Plaintiff must offer proof that the conditions at the JCADC were imposed as a form of punishment. *See Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *See Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *See id.* at 539.

Plaintiff claims that his legal correspondence from the Court was "conspicuous that someone had tampered with it...; unsealed it, due to a piece of clear tape resealing it." *See* Pl.'s Letter [8-1]. Plaintiff does not, however, claim that his ability to prepare or transmit necessary legal documents has been affected by this opening inspection. Nor does he allege that his mail has been censored. Defendants admit that there have been some instances where incoming legal mail to inmates has been inadvertently opened, but note that such is not the official policy of the JCADC. *See* Ex. "8" Attach. to Defs.' Mot. for Partial Summ. J. The Fifth Circuit has held that "the violation of the prison regulation requiring that a prisoner be present when his

incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993). Accordingly, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

Plaintiff also claims that upon re-entering the JCADC he was segregated from the general population for periods at a time. Defendants counter that at any point Plaintiff was placed in lockdown, it was for the legitimate governmental objective of maintaining jail security. Plaintiff has presented no direct evidence to indicate that he was ever placed in lockdown as a form of punishment for his pending criminal charges. Based on the record, the Court concludes that Plaintiff's placement in lockdown was reasonably related to the legitimate governmental objective of maintaining inmate discipline. This issue do not rise to the level of a constitutional violation.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement while a pretrial detainee at the JCADC, the Court finds that Defendants Byrd and Broadus in their individual capacities are entitled to qualified immunity. Plaintiff has failed to provide any direct evidence that Defendant Byrd or Broadus imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest. Therefore, Plaintiff has failed to establish a violation of a clearly established constitutional right.

3. <u>Defamation</u>

Plaintiff has alleged that Defendants Broadus and Rader defamed him, in that they purportedly made false statements to the Mississippi Press, which ran in a newspaper article. *See* Attach. [5-1] to Pl.'s Compl. Plaintiff asserts that Defendant Cindy Stewart defamed him by finding him guilty of the rules violation of assaulting an officer.

The tort of defamation is not actionable under section 1983 if a plaintiff is unable to connect the defamation to another injury so as to state a section 1983 violation. *See Geter v. Fortenberry*, 849 F.2d 1550, 1557 (5th Cir. 1988). A plaintiff can successfully invoke section 1983 only when his federal statutory or constitutional rights have been violated.

> Invasion of an interest in reputation alone is insufficient to establish § 1983 liability because a damaged reputation, apart from injury to a more tangible interest such as loss of employment, does not implicate any "liberty" or "property" rights sufficient to invoke due process. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Cook v. Houston Post*, 616 F.2d 791, 794-95 (5th Cir. 1980) (Appellants' interest with reputation, false arrest, malicious prosecution, libel and slander are matters which the state protects by virtue of its tort law... Having been deprived of no rights secured under the Constitution, appellants have no claim cognizable under § 1983."); *Thomas v. Kippermann*, 846 F.2d 1009, 1010-11 (5th Cir. 1988).

*Geter v. Fortenberry*, 849 F.2d 1550, 1556 (5th Cir. 1988).

Here, Plaintiff did not lose any employment. He was not re-arrested or incarcerated. He was already incarcerated for another matter. There is no evidence that Plaintiff suffered any injury to his reputation, or an injury that might amount to a constitutional deprivation. Even assuming Defendants' statements

were defamatory as a matter of tort law, summary judgment is proper because Plaintiff has not demonstrated a colorable violation of a "more tangible" constitutional interest in connection with the defamation.

    4.    <u>Wrongful RVR</u>

Plaintiff alleges that Defendant Stewart wrongfully found him guilty of an RVR for assaulting Defendant Albin. Essentially, Plaintiff is attempting to relitigate facts that were adjudicated during the disciplinary hearing. Plaintiff's assertions are indistinguishable from a malicious prosecution claim, which the Fifth Circuit has recognized "*may* form the basis of a § 1983 claim." *Ordaz v. Martin*, 5 F.3d 529, 1993 WL 373830, *6 (5th Cir. Sept. 15, 1993) (emphasis in original) (*citing Brummett v. Camble*, 946 F.2d 1178, 1180 n.2 (5th Cir. 1991)).[2] However, the Fifth Circuit has held that, "[e]ven assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison),... 'a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor.'" *Id*. (*quoting Brummett*, 946 F.2d at 1180 n.2).

In this case, Plaintiff has failed to allege, much less establish, that the disciplinary proceedings terminated in his favor; indeed, Plaintiff was found guilty. *See* Ex. "20-D" Attach. to Pl.'s Suppl. Resp. He has not made an arguable showing that any constitutional right has been violated. *See Hoye v. Nelson*, No. 4:07cv044-

---

[2] The Fifth Circuit used the term "may" because the issue has not been finally decided. *See Ordaz*, 1993 WL 373830, at *6 (*citing Brummett*, 946 F.2d at 1180 n.2).

M-B, 2007 WL 1321964, *1 (N.D. Miss. May 3, 2007) (dismissing plaintiff's claim regarding a "false RVR" *sua sponte*, reasoning that plaintiff's allegation did not amount to a constitutional violation).

Although Plaintiff argues that Defendant Stewart wrongfully found him guilty of the RVR, a "K. Stolk" signed the RVR in question, not Defendant Stewart. *See* Ex. "20-D" Attach. to Pl.'s Suppl. Resp.  The record reflects that Plaintiff was given four days notice of the RVR hearing.  He did not call any witnesses.  *See id.* The RVR states that Plaintiff was found guilty based on cameras and officers' statements.  *See id.*  To the extent that Plaintiff challenges the outcome of the RVR hearing, this Court does not "'second-guess' the findings and determinations of prison disciplinary committees[,]" nor does the "Constitution ... demand 'error-free' decision making..."  *See Hoye v. Nelson*, No. 4:07cv044-M-B, 2007 WL 1321964, *1 (N.D. Miss. May 3, 2007) (*quoting Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984)); *see also McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, *1-*2 (S.D. Miss. March 6, 2007) (internal citations and quotations omitted) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915, where plaintiff claimed that he was innocent of the charges in the RVR, his disciplinary hearing was delayed, and that the report reflected the incorrect date and time that he received a copy of the report; the court stated that a "prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

The record reflects that Defendant Stewart was not the hearing officer, that

Plaintiff was served with a notice of the hearing four days prior, that he attended the hearing but did not ask for assistance or call any witnesses, and that he was found guilty. Plaintiff was sentenced to BE Lockdown until July 11, 2007, a total of about eighteen days. There is no evidence that Plaintiff appealed the outcome of this hearing. Based on the evidence before the Court, Plaintiff has not made a showing of any constitutional violation on this point. "A plaintiff must be deprived of some right secured to him by the Constitution or the laws of the United States... In the event there is no constitutional right, the plaintiff's complaint fails." *Hoye v. Nelson*, No. 4:07cv044-M-B, 2007 WL 1321964, *1 (N.D. Miss. May 3, 2007) (citations omitted).

## III. CONCLUSION

Based on the forgoing analysis, the Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 supervisory liability claims. Furthermore, after considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendants Byrd, Broadus, Rader, or Stewart violated his constitutional rights during his incarceration at the JCADC by allegedly imposing unconstitutional conditions of confinement, defaming him, or wrongfully convicting him of an RVR violation. Therefore, the Court finds that Defendants' Motion for Partial Summary Judgment should be granted, and that all claims against Ken Broadus, Mike Byrd, Ricky Rader, and Cindy Stewart should be dismissed with prejudice, both in their

individual and official capacities. Furthermore, the Court finds that any official capacity claim against Defendant James Albin should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendants' Motion [36-1] for Partial Summary Judgment filed on February 11, 2009, should be and is hereby **GRANTED**, and Plaintiff's claims against Ken Broadus, Mike Byrd, Ricky Rader, and Cindy Stewart, both in their individual and official capacities, and against James Albin, in his official capacity, are all hereby **DISMISSED WITH PREJUDICE.** Plaintiff's remaining claim for excessive force against Defendant James Albin, in his individual capacity, will proceed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Plaintiff at his last known address, via the United States Postal Service, certified mail, return receipt requested.

**SO ORDERED AND ADJUDGED**, this the 28th day of September, 2009.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE